UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON, | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) No. 04 C 5852 ) |
| ARGONAUT INSURANCE COMPANY, | ) Judge Rebecca R. Pallmeyer ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Between 1959 and 1973, Respondent Argonaut Insurance Company, ("Argonaut"), a California-based insurer, entered into a series of reinsurance contracts with Petitioner Certain Underwriters at Lloyd's London ("Underwriters"), a syndicate of reinsurers whose participants include citizens of the United Kingdom. In 2004, after settling a claim with one of its insureds, Argonaut sought to recover under its contracts with Underwriters. When Underwriters sought to inspect the claim file, Argonaut demanded arbitration but missed a deadline for designating its desired arbitrator, with the result that Underwriters was able to appoint two arbitrators to the three-person panel. Argonaut's objections to the arbitration panel were overruled, see *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 444 F. Supp. 2d 909 (N.D. Ill. 2006), *aff'd* 500 F.3d 571 (7th Cir. 2007), and Argonaut narrowly avoided an award of sanctions under Rule 11 of the Federal Rules of Civil Procedure for prosecuting an unsuccessful effort to stay the arbitration proceedings. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, No. 04-5852, 2006 WL 3486882 *5 (N.D. Ill. Nov. 29, 2006).

Having prevailed in arbitration and won an award of attorneys' fees from the arbitrator, Underwriters now seeks an order confirming the award. Argonaut, for its part, asks the court to vacate the arbitral award of attorneys' fees, contending that the arbitrators exceeded their authority and that Judge Filip's denial of sanctions raises a *res judicata* bar to Underwriters' recovery of fees.

For the reasons set forth here, Underwriters' petition is granted and Argonaut's motion to vacate the award of fees is denied.

## **BACKGROUND**

As the dispute between the parties has been described in detail in earlier opinions, *see Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 500 F.3d 571, 572-74 (7th Cir. 2007), the court merely summarizes the facts here briefly. Underwriters and Argonaut executed a series of reinsurance contracts, or "treaties," prior to 1973. (D.E. 1 ¶ 6; D.E. 26 ¶ 2, 6.)[1] Some time in 2004, Argonaut settled a claim made by two of its insureds, Western MacArthur and Western Asbestos (collectively, "Western") and then sought to recover some portion of these payments from Underwriters under the reinsurance agreements. (D.E. 26 ¶¶ 5-6.) Underwriters responded by requesting supporting information and the opportunity to inspect Argonaut's claim files relating to the settlement. (*Id.* ¶ 7.) Rather than provide such information, Argonaut invoked the arbitration provision of the reinsurance agreement, issuing a demand for arbitration on August 4, 2004. (*Id.* ¶ 8.)

Argonaut's demand triggered certain obligations and a contractual deadline for naming the panel of arbitrators. The arbitration clauses state, in relevant part:

> If any dispute shall arise between the Company and the Underwriters with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, this dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it do so, the requesting party may nominate two arbitrators, who shall choose the third . . . . The arbitrators shall consider this agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the Company and the Underwriters.

(D.E. 26 ¶ 9; D.E. 21-3 at 1; D.E. 53-2, at 31.) Underwriters timely appointed its first arbitrator by

---

[1] The designation "D.E." refers to the docket entry number of the cited document.

facsimile letter dated September 3, 2004. (D.E. 26 ¶ 12.) On August 6, 2004, Underwriters requested that Argonaut designate its preferred arbitrator within 30 days, as required by the arbitration provision. (*Id.* ¶ 8.) The thirtieth calendar day from the date of Underwriters' request fell on Sunday, September 5, 2004, the day before Labor Day; Labor Day is a national holiday in the United States but an ordinary business day in the United Kingdom, where Underwriters is based. Argonaut failed to name an arbitrator by September 5, 2004. Accordingly, on September 7, 2004, Underwriters appointed a second arbitrator as contemplated by the arbitration clause. Argonaut refused to proceed to arbitration, contending that Sunday and Labor Day should not be counted, but Judge Filip of this court disagreed, and his decision was upheld on appeal.

During the pendency of its appeal from Judge Filip's ruling, Argonaut moved for an order staying the enforcement of the district court's summary judgment—that is, deferring arbitration proceedings pending the resolution of Argonaut's appeal. (Motion to Stay, Ex. E to Resp.'s Mot.) The district court denied that request, concluding that Argonaut had failed to make the required showings of irreparable harm and likelihood of success on the merits. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, No. 04-5852, 2006 WL 3486882 *5 (N.D. Ill. Nov. 29, 2006). Underwriters contended that Argonaut's motion for a stay violated Rule 11(b) and (c) of the Federal Rules of Civil Procedure, and sought sanctions. (Petitioner's Response, Ex. F to Resp.'s Mot. at 5-8.) Although Judge Filip denied Underwriters' motion for procedural reasons—Underwriters had not given Argonaut notice and opportunity to respond, as required by Rule 11—he considered imposing sanctions of attorneys' fees on his own motion. *Certain Underwriters,* 2006 WL 3486882 *6. In the end, the court concluded that Argonaut's attempts to distinguish controlling precedent were "weak–quite weak–but they [were] not sufficiently enfeebled as to lead the Court to exercise its discretion so as to impose sanctions." *Id.* Judge Filip said, "The issue is a close one, and the Court believes the propriety *vel non* of sanctions is an issue on which discretion could be fairly exercised in either direction, but given Argonaut's attempts to distinguish contrary precedent, the

3

Court will exercise leniency and decline the request for sanctions here." *Id.*

Following the court's ruling, the dispute proceeded to arbitration under the terms of the arbitration agreement. In the context of that arbitration, each of the parties sought to recover the attorneys' fees expended litigating over the constitution of the panel. (Argonaut's Pre-Hearing Reply Brief, Ex. J to Resp.'s Mot. at 33-35; Underwriters' Pre-Hearing Brief, Ex. I to Resp.'s Mot. at 33-36.) Underwriters contended that it was entitled to attorneys' fees because Argonaut had acted in "bad faith" before and throughout the arbitration by unnecessarily prolonging the process. (Underwriters' Pre-Hearing Brief, Ex. I to Resp.'s Mot. at 33.) In its brief to the panel, Underwriters noted that Argonaut "hastily demanded arbitration, then filed a frivolous motion in federal court to prolong the dispute after it failed to make a timely appointment of an arbitrator, then played games during the discovery process of this arbitration, all at significant and unnecessary cost to Underwriters." (*Id.*) Without lengthy explanation, the arbitration panel awarded Underwriters "all reasonable legal fees incurred" during the period from October 6, 2004 until May 1, 2007, "arising out of the disputes relating to this arbitration and the constitution of the Panel," to be paid by Argonaut. (Arbitration Findings and Award, Ex. H to Resp.'s Mot. at 10.) This time frame covers the entire litigation over the constitution of the panel, culminating in Argonaut's motion to stay enforcement of Judge Filip's ruling.

On November 13, 2008, Argonaut moved to vacate the arbitrators' award of attorneys' fees. Argonaut contends that the award is inconsistent with Judge Filip's November 29, 2006 ruling and therefore exceeded the arbitrators' power and violated principles of *res judicata.* Underwriters has petitioned for the court to confirm the arbitral award. (D.E. 53, D.E. 73.) As neither party has addressed the arbitrators' substantive ruling, the fee award is the only issue before the court.

## **DISCUSSION**

In asking the court to vacate the arbitral award, Argonaut faces a stiff burden. The Federal Arbitration Act explains that an award may be set aside in only four circumstances:

4

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The statute does not authorize a freewheeling judicial review of arbitration awards. *See, e.g., Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (and cases cited therein). On the contrary, the judicial role is "tightly limited" in this context. *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994). "[W]e do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision." *Id.* As the Seventh Circuit explained:

> When the parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc.-conduct to which the parties did not consent when they included an arbitration clause in their contract.

*Wise*, 450 F.3d at 269. The scope of judicial review in this area is therefore so restrained, "perhaps it ought not to be called 'review' at all." *Baravati*, 28 F.3d at 706. Our Court of Appeals has repeatedly and unequivocally stated that courts "do not–and will not–review arbitral awards for legal or factual error," and has expressed "frustration" with litigants who seek relief from the arbitration on other grounds. *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008). Courts "will not set aside an arbitral award so long as the arbitrator interpreted the parties' agreement *at all*." *Id*. To say that courts generally do not look favorably on the type of undertaking Argonaut asks of the court would be a considerable understatement.

5

Argonaut nevertheless attempts to enter the "back door," urging that the court should review the arbitrators' award of fees for two substantially-overlapping reasons. First, Argonaut claims that by awarding fees in favor of Underwriters, the arbitrators exceeded their authority within the meaning of 9 U.S.C. § 10(a)(4). The fee award, Argonaut reasons, is inconsistent with Judge Filip's November 29, 2006 ruling declining to sanction Argonaut under Rule 11. Second, Argonaut claims that the November 29, 2006 order has preclusive effect, barring the subsequent arbitral award under the doctrine of *res judicata*. For the reasons explained here, the court finds neither of these arguments persuasive.

**Arbitrator Authority**

The scope of the arbitrators' authority is generally determined by the arbitration agreement itself. *See, e.g., Clear Channel Outdoor, Inc. v. Int'l Unions of Painters and Allied Trades*, *Local 770*, 558 F.3d 670, 674 (7th Cir. 2009). The arbitration agreement in this case grants the panel broad authority: "The arbitrators shall consider this agreement an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following strict rules of law." (D.E. 53-2, at 31.) The agreement states, further, that the decision of the panel is to be final and binding on both parties. (*Id.*) This court is not called upon to discern the meaning of the term "honorable engagement" or otherwise to determine the arbitrators' powers. "[T]he scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum, and Plastic Workers of America,* 461 U.S. 757, 765 (1987).

Argonaut does not dispute that the arbitration panel would have had the authority under the agreement to award attorneys' fees in the absence of a court order. Indeed, Argonaut itself requested that the arbitration panel award it attorneys' fees as against Underwriters. (Argonaut's Pre-Hearing Reply Brief, Ex. J to Resp.'s Mot. at 33-35.) Instead, Argonaut contends only that this court's earlier order stripped the arbitration panel of the authority to award attorneys' fees in

Underwriters' favor. (Resp.'s Mot. at 3.)

Judicial review of the arbitrators' own conclusions regarding the scope of their authority is extremely limited. In general, "[a]rbitrators have completely free rein to decide the law as well as the facts and are not subject to appellate review." *Baxter Intern., Inc. v. Abbott Laboratories*, 315 F.3d 829, 831 (7th Cir. 2003) (*quoting Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149 (1968)). Judicial intervention is limited to those situations in which an arbitral order requires the parties to violate the law. *See George Watts & Son, Inc. v. Tiffany and Co.*, 248 F.3d 577, 580 (7th Cir. 2001). In arguing that this standard is met, Argonaut apparently interprets Judge Filip's ruling on Underwriters' Rule 11 motion as *prohibiting* the arbitrators from awarding fees in Underwriters' favor.

As ths court reads that ruling, however, nothing about it suggests that Judge Filip intended to prohibit any ruling by the arbitrators, or to provide any direction on this issue at all. Judge Filip's focus was on Rule 11, which authorizes a court to impose a sanction (which may or may not be an award of attorneys' fees) against a party that has made arguments that are "frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir. 1998). Thus, as the Supreme Court stated, the purpose of Rule 11 "is not reimbursement but 'sanction' . . . ." *Pavelic & Le Flore v. Marvel Entertainment Group*, 493 U.S. 120, 126 (1989); *see also Brandt v. Schal Associates, Inc.*, 960 F.2d 640, 646 (7th Cir. 1992). The policy underlying this sanction is to deter abusive litigation practices. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). In this context, the language of Rule 11 provides that attorneys' fees may sometimes be "warranted for effective deterrence," but the rule in no way suggests sanctions must be limited to or equivalent with attorneys' fees. FED. R. CIV. P. 11(c)(4).

Nor is a decision that Argonaut's conduct did not require a formal sanction somehow tantamount to a determination that a fee award in Underwriters' favor would violate the law. Notably, Judge Filip's ruling makes it clear that the imposition of Rule 11 sanctions against

Argonaut was a close question. *See Certain Underwriters,* 2006 WL 3486882 at *6. ( N.D. Ill. Nov. 29, 2006). Argonaut's argument here amounts to a suggestion that its narrow escape from a sanctions award for the motion for stay insulates it from the arbitrators' fee-shifting determination. Judge Filip's decision to deny a Rule 11 motion sets no boundaries on the arbitrators' powers, however; and the issue of whether Argonaut's litigation posture was frivolous or legally unreasonable is wholly separate from the issue of whether the arbitration panel has power to award compensation for Underwriters in the parties' dispute as a contractual remedy. Indeed, by seeking a fee award in its own favor, Argonaut effectively acknowledged that the panel has such power.

The arbitration panel did not offer a clear indication of the basis for its award of attorneys' fees in the Arbitration Finding and Awards document, but it was under no obligation to do so. *See Wise*, 450 F.3d at 268 ("Arbitrators have, however, no duty to explain [the basis of their decision]."). Reviewing courts have consistently upheld arbitral awards of attorneys' fees where both parties have submitted the issue of fees to the arbitrator and the arbitrator appears to have properly considered the issue. *See, e.g.*, *Saipem America v. Wellington Underwriting Agencies, Ltd.*, No. 08-20247, 2009 WL 1616122, *3 (5th Cir. June 9, 2009) ("Because the parties submitted the issue of attorneys' fees to the tribunal . . . , the tribunal properly considered the issue. We find the arbitrators did not exceed their powers or award upon a matter not submitted to them.").

Though it is not for this court to examine the merits of the arbitration decision, nothing about the panel's conclusion is inconsistent with Judge Filip's ruling. Judge Filip looked at the propriety of Argonaut's motion for a stay. That motion was but one small fraction of the legal wrangling for which Underwriters requested attroneys' fees from the panel. It was Argonaut's conduct over almost two years of litigation that Underwriters characterized as "bad faith" performance under the arbitration clauses and a breach of the duties imposed by the parties' "honorable engagement." (Underwriters' Pre-Hearing Brief, Ex. I to Resp.'s Mot. at 33.) Argonaut initially demanded arbitration, then sought to avoid it. It failed to adhere to the straightforward requirements for

appointing an arbitrator and then litigated a dispute over the plain meaning of the words "thirty days" to a federal court of appeals. Argonaut's entire performance under its "honorable engagement"—and a determination that this performance was dishonorable and conducted in bad faith—constitutes a proper basis for the arbitration panel's decision. Nothing about that decision is inconsistent with the court's discretionary decision to deny Underwriters' motion for Rule 11 sanctions for Argonaut's motion to stay.

The authorities Argonaut relies on are not to the contrary. Argonaut cites a string of cases for the proposition that an arbitrator may not order a violation of a court order (Resp.'s Mot. at 3-4)–an accurate statement of the law, but one that is not implicated in this case. The central case establishing the precept that an arbitrator may not order a party to violate a court order is *W.R. Grace & Co.,* 461 U.S. 757. In that case, an employer signed a conciliation agreement with the Equal Employment Opportunity Commission that conflicted with seniority provisions in a collective bargaining agreement. When an arbitrator ruled in favor of employees laid off as a result of the employer's refusal to adhere to the collective bargaining agreement, the employer moved to vacate the award on the ground that it required action inconsistent with the conciliation agreement. Affirming the Fifth Circuit's conclusion upholding the arbitral award, the Supreme Court acknowledged that "obedience to judicial orders is an important public policy," but found "nothing in the collective bargaining agreement . . . [that] required the company to violate that order." *Id.* at 766-68.

The *W. R. Grace* opinion recognized that where an arbitration could accurately be said to *violate* a court order—a true double bind where the bound party must either disobey a court order or the terms of an arbitration—a court would be empowered to vacate the arbitral decision. *Id.* That is not the case Argonaut now presents. Argonaut's case is much more like *W.R. Grace & Co.* itself; the arbitral award and judicial order are not, in fact, inconsistent. Judge Filip's order imposed no affirmative burden on Argonaut. The court did not *prohibit* Argonaut from paying Underwriters'

9

attorneys' fees. The court simply declined to impose sanctions against Argonaut under the standards and purposes of Rule 11. An arbitral award ordering compensation to Underwriters, under an entirely separate basis with different standards and purposes, cannot be said to violate or disturb the court's order.

In *W.R. Grace & Co.*, the Supreme Court reasoned that the "petitioner was cornered by its own actions [in undertaking conflicting contractual responsibilities]," and was therefore not entitled to judicial intervention. 461 U.S. at 758. Argonaut is similarly cornered by its own actions here. Argonaut voluntarily entered into the agreements that specified the terms of arbitration, thereby opting out of recourse to the court system. Argonaut initiated the arbitration process itself with its demand, but then resisted arbitration, generating substantial expense for Underwriters. There is no merit in Argonaut's suggestion that it should be relieved from the arbitrators' direction that it reimburse Underwriters, an obligation that Argonaut appears to concede would be valid had the court never considered Rule 11 sanctions at all. The award of attorneys' fees did not contradict the Judge Filip's ruling and did not exceed the authority of the arbitrators.

### *Res Judicata*

Argonaut's second objection to the arbitral award is that it is barred by Judge Filip's ruling under the doctrine of *res judicata*. This argument is closely related to the one the court has already addressed, and fares no better. The doctrine of *res judicata*, or claim preclusion, has three elements: a final decision in the first suit; a dispute arising from the same transaction; and an identity of litigants. *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 850 (7th Cir. 2009). The first element, a final decision, is characterized as a "final judgment on the merits." *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008). Generally, a decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Trustees of Pension, Welfare, and Vacation Fringe Benefit Funds of IMEW Local 701 v. Pyramid Elec.*, 223 F.3d 459, 463 (7th Cir. 2000) (internal citations omitted). "The second element–identity of the cause of

action–is determined by using the 'operative facts' or 'same transaction' test." *Alvear-Velez*, 540 F.3d at 677. The doctrine of *res judicata* is designed to minimize the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.* (*citing Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

This court is not aware of, nor does Argonaut offer, any authority for the proposition that a denial of a motion for sanctions under Rule 11 can be construed as a final judgment on the merits for claim preclusion purposes. On the contrary, it is difficult to imagine a circumstance in which a discretionary Rule 11 ruling could be understood as constituting a final judgment on the merits entitled to preclusive effect. It seems plain enough that the court would not have been barred from subsequently imposing Rule 11 sanctions had Argonaut persisted with frivolous motions. Nor would the ruling have barred the court from awarding attorneys' fees on some other permissible basis.

Argonaut cites a number of cases for the proposition that completed litigation cannot be relitigated in an arbitral forum. *See, e.g., Telephone Workers Union of New Jersey, Local 827, International Brotherhood of Electrical Workers, AFL-CIO v. New Jersey Bell Telephone Co.*, 584 F.2d 31, 33 (3rd Cir. 1978). Those cases are inapposite here. As the court in *Telephone Workers* held, a court may refuse to enforce an arbitral judgment when "prior completed litigation has already finally determined all the issues" such that resort to arbitration amounts to a "collateral attack upon the decree." *Id.* The prior consent decree at issue in *Telephone Workers* bears little resemblance to the court's denial of a Rule 11 motion on procedural grounds, however. As explained earlier, the arbitration panel awarded fees apparently on the basis of the panel's own evaluation of Argonaut's conduct under its contractual obligations. No final judgment from this court addressed that issue. Similarly, for reasons much like those already explained, Argonaut also fails to establish that the arbitral award and the Rule 11 ruling present sufficient identity of cause of action to be precluded

11

under *res judicata*. Argonaut's motion to vacate the award on this ground is denied.

**Underwriters' Petition to Confirm Arbitration**

The court turns, finally, to Underwriters' petition to confirm the arbitral award pursuant to the FAA's provisions covering arbitral awards under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. § 207. This court has previously determined that the Convention applies to the arbitration agreements in this case. *Certain Underwriters*, 444 F. Supp.2d at 910. The court has proper federal question jurisdiction over Underwriters' petition under the FAA. 9 U.S.C. § 203; 28 U.S.C. § 1331. As the FAA explains, absent one of the statutorily-identified bases for refusal or deferred recognition, the court has no discretion under the FAA to refuse to confirm an arbitral award. "The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

Argonaut raises no objections in its response to Underwriters' petition other than the arguments advanced in its motion to vacate. (D.E. 64.) As explained above, the court finds no grounds for refusal or deferral under the FAA. 9 U.S.C. § 10(a). Underwriters' petition is therefore granted. The court confirms the arbitration panel's Findings and Awards in their entirety and enters judgment in conformity with the Findings and Awards.

## **CONCLUSION**

Respondent's motion to vacate the arbitral award [65] is denied. Petitioner's petition to confirm the arbitral award [53] is granted. The court enters judgment in conformity with the Findings and Awards of the arbitration panel.

ENTER:

Dated: September 24, 2009

_____
REBECCA R. PALLMEYER

12

United States District Judge